BRYAN J. HARRISON, ESQ. (SBN 277312)
*Bryan@h-klaw.com*
EDI P. KRISTOPHER, ESQ.  (SBN 284833)
*Edi@h-klaw.com*
**HARRISON | KRISTOPHER, LLP**
301 E Colorado Blvd Ste 323
Pasadena CA  91101
Phone: (866) 529-6155
FAX:   (866) 565-6206

HOSSEIN KHATAMI, ESQ. (SBN 278350)
*Hoss@hosslaw.com*
**KHATAMI LAW, APC**
2140 Professional Dr Ste 150
Roseville CA  95661
Phone: (916) 788-4445
FAX:   (916) 788-4447

Attorneys for Plaintiff, NICOLE TORRES,
individually, and as Successor-in-Interest to the
Estate of KEVIN A. TORRES, Deceased

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| NICOLE TORRES, individually, and as Successor-in-Interest to the Estate of KEVIN A. TORRES, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; KELLY SANTORO, Warden of Salinas Valley State Prison, in her individual and official capacities; RALPH M. DIAZ, Secretary of CDCR, in his official capacity; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1) 42 U.S.C. § 1983:  Eighth Amendment (Failure to Protect);<br>2) 42 U.S.C. § 1983:  Fourteenth Amendment (Familial Association);<br>3) 42 U.S.C. § 1983:  Supervisory Liability;<br>4) Wrongful Death;<br>5) Survival Action;<br>6) Negligence;<br>7) Breach of Mandatory Duty;<br>8) Bane Act (Civ. Code § 52.1);<br>9) Failure to Summon Medical Care (Gov. Code § 845.6); and,<br>10) Injunctive/Declaratory Relief<br><br>**DEMAND FOR TRIAL BY JURY** |

COMES NOW Plaintiff NICOLE TORRES, individually and as Successor-in-Interest to the Estate of KEVIN A. TORRES, Deceased, by and through her attorneys of record, Harrison | Kristopher, LLP, and Khatami Law, APC, and hereby complains and alleges against Defendants CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR"), KELLY SANTORO, RALPH M. DIAZ, and DOES 1-50 as follows:

## **PRELIMINARY STATEMENT**

1.      This civil rights action arises from the preventable murder of Kevin A. Torres, a 26-year-old man who was strangled to death by his cellmate, Thomas Farias, on November 29, 2025 – his birthday – at Salinas Valley State Prison ("SVSP"). Mr. Torres had been housed at SVSP for only approximately seven weeks after being transferred from High Desert State Prison ("HDSP"), where documented threats against his life had been formally recorded by prison officials in a CDC Form 128-B General Chrono.

2.      **This is not a case of negligence. This is a case of deliberate indifference.** Prison officials knew Kevin Torres was a target for violence. They documented that knowledge. When Torres formally requested protective housing, the Institutional Classification Committee expressly referenced the documented threat – and denied his request anyway. They then transferred him to one of the most violent prisons in California and assigned to a cell him with a convicted violent offender whose criminal history included domestic violence involving strangulation. Seven weeks later, Torres was strangled to death.

3.      At least five inmates were murdered at Salinas Valley State Prison between September 2024 and November 2025, including Kevin Torres. At least two prior victims – Colin Hebert (September 30, 2024) and Jose Rodriguez (June 27, 2025) – were killed by their own cellmates. Despite this pattern of cellmate homicides, CDCR implemented no corrective measures to its classification screening protocols before Torres' death.

4.      The evidence of deliberate indifference is overwhelming:  (a) On September 10, 2025, Correctional Sergeant R. Sylva formally documented a "dangerous situation" for

Kevin Torres arising from a drug debt that would lead to "potential violent altercations"; (b) Torres formally requested Non-Disciplinary Restrictive Housing ("NDRH"), invoking the institutional safety mechanism designed for precisely this situation; (c) the Institutional Classification Committee ("ICC") expressly referenced Sergeant Sylva's September 10, 2025, threat documentation in its written decision – confirming actual awareness of a specific risk of violence – yet denied Torres' protective housing request; (d) the ICC transferred Torres to SVSP without ensuring protective measures at the receiving institution; (e) SVSP classification staff assigned Torres to a cell with Thomas Farias, a convicted violent offender whose criminal history included corporal injury on a spouse/cohabitant involving strangulation-type conduct; and (f) correctional officers failed to conduct security checks at the intervals required by regulation, resulting in a nearly three-hour gap during which Torres was strangled to death.

5.      When Kevin Torres was awaiting transfer, he told his registered domestic partner, Nicole Torres, that if he were killed, she should sue the State of California. He understood what Defendants consciously disregarded: **The denial of protective housing and transfer without protective classification was the moving force behind his death.**

## JURISDICTION AND VENUE

6.      This Court has original federal question jurisdiction over Plaintiff's federal civil rights claims under section 1331 of title 28 of the United States Code and section 1983 of title 42 of the United States Code.

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims under section 1367 of title 28 of the United States Code because they arise from the same case or controversy as Plaintiff's federal claims.

8.      Venue is proper in this District under section 139(b) of title 28 of the United States Code because a substantial part of the events giving rise to this action occurred at Salinas Valley State Prison in Monterey County, California, which is within the Northern District of California, San Jose Division.

///

## COMPLIANCE WITH GOVERNMENT CLAIMS ACT

9.      Plaintiff has complied with the claims presentation requirements of the California Government Claims Act, Government Code sections 810 et seq.

10.     On or about January 8, 2026, Plaintiff presented a written claim to the California Government Claims Program pursuant to Government Code sections 905 and 910, setting forth the facts and circumstances giving rise to this action and the damages claimed.

11.     More than forty-five (45) days have elapsed since Plaintiff presented her claim, and Defendant CDCR has failed to provide written notice of action on the claim within the time prescribed by Government Code section 912.4. Accordingly, the claim is deemed rejected by operation of law pursuant to Government Code section 912.4(c).

12.     All conditions precedent to maintaining this action for damages against public entity and public employee defendants have been performed or have occurred.

## PARTIES

**A.    Plaintiff**

13.     Plaintiff NICOLE TORRES is, and at all relevant times was, a resident of Sacramento County, California. Nicole Torres brings this action in her individual capacity as Kevin Torres' surviving registered domestic partner, and as Successor-in-Interest to the Estate of Kevin A. Torres, Deceased, pursuant to California Code of Civil Procedure sections 377.30 and 377.60. Nicole Torres has executed a declaration pursuant to Code of Civil Procedure section 377.32 establishing her status as the decedent's successor-in-interest, which declaration is filed concurrently herewith.

14.     Kevin A. Torres and Nicole Torres were registered domestic partners pursuant to California Family Code sections 297 et seq. At the time of Kevin's death, they maintained a committed relationship. Nicole Torres was entitled to Kevin's love, companionship, comfort, care, assistance, protection, affection, society, and moral support – all of which were taken from her by Defendants' deliberate indifference.

///

**B.    Defendants**

15.    **Eleventh Amendment Limitation on CDCR Liability**:  Defendant CDCR, as the California Department of Corrections and Rehabilitation, is an agency of the State of California and constitutes an arm of the state for purposes of Eleventh Amendment immunity. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). CDCR is named as a Defendant solely for vicarious liability on state law claims under California Government Code section 815.2(a), subject to the limitations and immunities set forth in Government Code sections 844.6 and 845.6. CDCR is not named as a defendant on any federal constitutional claim.

16.    **Individual Defendant Liability**: Defendant SANTORO and DOES 1 through 50, acting in their individual capacities, are personally liable for their own acts and omissions that violated Decedent's and Plaintiff's rights under the United States Constitution and California law. These individual defendants acted under color of state law and are subject to liability for compensatory and punitive damages.

17.    Defendant KELLY SANTORO was, at all relevant times, the Acting Warden and subsequently Warden and chief administrator of Salinas Valley State Prison. Defendant Santoro served as Acting Warden of SVSP since January 30, 2025, and was officially appointed Warden in January 2026. Warden Santoro was responsible for implementing and enforcing CDCR policies and procedures at SVSP, including those relating to inmate classification, cell assignments, security checks, and protection from violence. Warden Santoro is sued in her individual capacity for her own culpable action and inaction, and in her official capacity solely for purposes of prospective injunctive and declaratory relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), as more fully alleged below.

18.    Defendant RALPH M. DIAZ is, and at all relevant times was, the Secretary of the California Department of Corrections and Rehabilitation. Secretary Diaz is the chief executive officer of CDCR and bears ultimate responsibility for the policies, practices, and procedures governing all CDCR institutions, including Salinas Valley State Prison. Secretary

Diaz is sued solely in his official capacity for purposes of prospective injunctive and declaratory relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908).

19.    **Defendants DOES 1-10 (HDSP Institutional Classification Committee)**: Defendants DOES 1-10 are members of the Institutional Classification Committee ("ICC") at High Desert State Prison who, in September and October 2025:

a. Received, reviewed, and discussed **Correctional Sergeant R. Sylva's September 10, 2025, CDC Form 128-B General Chrono** documenting the "dangerous situation" and "potential violent altercations" targeting Kevin Torres;

b. Received and reviewed Kevin Torres' formal request for Non-Disciplinary Restrictive Housing ("NDRH") – the classification specifically designed for incarcerated persons facing safety concerns that cannot be addressed in general population;

c. **Expressly referenced Sergeant Sylva's September 10, 2025, threat documentation in the ICC's written decision**, confirming actual awareness of a specific risk of violence to Torres;

d. Knowingly disregarded the documented threat by denying Torres' NDRH request, invoking California Code of Regulations, title 15, section 3335(b)(2), to blame Torres for his own vulnerability; and,

e. Approved Torres' transfer to Salinas Valley State Prison – a facility that had already experienced multiple homicides in the preceding twelve months – without ensuring protective measures, appropriate classification, or safe housing placement at the receiving institution.

### THE SPECIFIC RISK OF VIOLENCE

**The ICC's written decision confirms actual awareness of a specific risk of violence.** California Code of Regulations, title 15, section 3376 requires the ICC to review documented safety concerns when making classification and transfer decisions. The ICC complied with this procedural requirement – it reviewed the threat documentation – but

consciously elected not to implement protective measures. This is deliberate indifference, not negligence. The right of an inmate to be protected from known threats of violence has been clearly established since *Farmer v. Brennan,* 511 U.S. 825 (1994). DOES 1-10 are sued in their individual capacities.

20.    **Defendants DOES 11-20 (SVSP Classification and Housing Assignment Personnel)**:  Defendants DOES 11-20 are members of the classification committee and/or housing assignment personnel at Salinas Valley State Prison who, in November 2025:

a. **Pursuant to mandatory CDCR intake classification protocol, reviewed Torres' Central File ("C-File")**, which contained:

(i)    Sergeant Sylva's September 10, 2025, CDC Form 128-B Threat Chrono;

(ii)    The ICC's written decision denying NDRH and referencing the threat;

(iii)    Torres' enemy concern documentation;

(iv)    Torres' gang dropout status documentation;

b. **Pursuant to mandatory CDCR intake classification protocol, reviewed Thomas Farias' classification file**, which documented his violent criminal history including corporal injury on a spouse/cohabitant involving strangulation-type conduct and assault with a firearm;

c. Received transfer packet documentation from HDSP that included Torres' safety alerts and enemy concerns, as required by CDCR Department Operations Manual provisions governing inter-institutional transfers of inmates with documented safety concerns;

d. **After acknowledging the documented threat to Torres and reviewing Farias' violent history, consciously elected to approve the cell assignment without implementing protective measures**, compatibility screening, or enhanced monitoring.

CDCR's Strategic Offender Management System ("SOMS") flags inmates with safety concerns and documented threats. Torres' SOMS record contained alerts arising from Sergeant Sylva's Chrono and the ICC's NDRH determination. Classification staff reviewed and discussed this information as part of mandatory intake classification. Despite actual awareness of the documented threat, DOES 11-20 placed Torres in a cell with a violent offender. This is deliberate indifference, not negligence. DOES 11-20 are sued in their individual capacities.

21.    **Defendants DOES 21-30 (D Yard, Building 8, Correctional Officers, 11/29/25 Evening Watch):** Defendants DOES 21-30 are correctional officers assigned to D Yard, Building 8 at Salinas Valley State Prison during the evening watch on November 29, 2025, who:

a. **Were briefed on Torres' documented threat status during shift briefings**, consistent with SVSP institutional protocol requiring communication of safety alerts for inmates housed in the unit;

b. Reviewed housing-unit safety logs that reflected Torres' enemy concerns and documented vulnerability;

c. **Were aware of the altercation between Torres and Farias earlier on November 29, 2025**, based on the audible nature of the argument (which Torres described as involving Farias "freak[ing] out and start[ing] yelling") and/or incident reports or verbal communications during the shift;

d. Despite actual awareness of the documented threat and the earlier altercation, failed to conduct security checks at the intervals required by California Code of Regulations, title 15, section 1027.5 and institutional post orders, resulting in the nearly three-hour gap between Torres' last known contact (6:35 p.m.) and the discovery of his body (9:19 p.m.);

e. **Knowingly disregarded the heightened risk created by the combination of Torres' documented vulnerability and the earlier cell**

**conflict** by failing to implement enhanced monitoring, separate the cellmates, or otherwise intervene.

The manner of death – strangulation – indicates a prolonged attack that would have been interrupted by timely security checks. Manual strangulation typically requires sustained pressure for several minutes to cause death. Had DOES 21-30 conducted checks at the required 30-minute intervals, Torres would have been discovered during the attack and emergency medical care summoned. DOES 21-30 are sued in their individual capacities.

22.    **Defendants DOES 31-50** are other CDCR employees, supervisors, and officials whose identities are presently unknown to Plaintiff, who participated in, supervised, or otherwise contributed to the decisions and omissions that resulted in Kevin Torres' death. DOES 31-50 are sued in their individual capacities.

23.    Plaintiff will amend this Complaint to state the true names and capacities of these DOE Defendants when they are ascertained through discovery.

24.    At all relevant times, each individual Defendant was acting under color of state law within the meaning of section 1983 of title 42 of the United States Code.

## GENERAL ALLEGATIONS

25.    At all times relevant herein, all wrongful actions described were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

26.    KEVIN A. TORRES was a 26-year-old man at the time of his death on November 29, 2025.

27.    TORRES was received from Sonoma County on October 26, 2018, to serve a 19-year sentence for attempted second-degree murder with firearm-discharge enhancements. During his incarceration, TORRES was transferred through multiple CDCR facilities before being transferred to Salinas Valley State Prison ("SVSP"), where he was killed.

///

///

///

COMPLAINT FOR DAMAGES and DEMAND FOR TRIAL BY JURY
CASE NO.                                          Page 9 of 26

**A.    The Documented Threat and HDSP ICC's Deliberate Denial of Protective Housing**

28.    Prior to his transfer to SVSP, KEVIN TORRES was incarcerated at High Desert State Prison ("HDSP"). While at HDSP, TORRES was involved in a physical altercation and was subsequently threatened with stabbing. Upon information and belief, Torres' registered domestic partner, NICOLE TORRES, personally contacted HDSP officials to report these threats. Following these reports, TORRES was placed in administrative segregation.

29.    **On September 10, 2025, Correctional Sergeant R. Sylva of the CDCR completed a CDC Form 128-B General Chrono formally documenting that a confidential source had identified a "dangerous situation" for KEVIN TORRES arising from a drug debt that would lead to "potential violent altercations."** This Chrono was placed in Torres' Central File and constituted actual, specific, and recorded knowledge by CDCR custody staff that TORRES was an identified target for violence.

30.    In response to the documented threat, KEVIN TORRES formally requested placement in Non-Disciplinary Restrictive Housing ("NDRH"). NDRH is a classification specifically designed by CDCR to provide safe housing for incarcerated persons who face safety concerns that cannot be addressed in a general population setting. Torres' NDRH request placed the ICC on explicit notice that Torres believed his life was in danger.

31.    California Code of Regulations, title 15, section 3376 requires the ICC to review documented safety concerns when making classification and housing decisions. Pursuant to this mandatory review requirement, Defendants DOES 1-10, members of the ICC at HDSP, reviewed and discussed Sergeant Sylva's September 10, 2025, Threat Chrono during the ICC hearing on Torres' NDRH request. **The ICC's written decision expressly references the September 10, 2025, threat documentation, confirming actual awareness of the specific risk of violence to Torres.**

32.    Despite acknowledging the documented threat, the ICC denied Torres' request for protective housing. The ICC invoked California Code of Regulations, title 15,

section 3335(b)(2), concluding that Torres' safety risks were a "direct consequence of his voluntarily accrued drug debt." By this reasoning, the ICC simultaneously acknowledged a genuine, documented safety threat while refusing the protective housing classification designed to address precisely such threats – **effectively punishing Torres for the very vulnerability that placed his life in danger.**

33. After acknowledging the specific risk of violence to Torres, the ICC approved his transfer to Salinas Valley State Prison without ensuring protective measures at the receiving institution. **This was not an oversight. The ICC knowingly disregarded the documented threat and consciously elected not to implement available protective measures.**

34. While awaiting transfer, KEVIN TORRES communicated his own imminent fear for his life to his registered domestic partner, NICOLE TORRES, specifically instructing her to sue the State of California if he were killed. Torres understood what Defendants consciously disregarded.

**B.    The Deliberately Indifferent Cell Assignment at SVSP**

35. Upon his arrival at SVSP in early November 2025, TORRES was assigned to D Yard, Building 8. Because TORRES had left the Northerners gang in 2024, he was placed on a non-designated programming yard without the traditional protections of gang affiliation, yet without protective custody or enhanced monitoring.

36. Pursuant to mandatory CDCR intake classification protocol, Defendants DOES 11-20 reviewed Torres' Central File upon his arrival at SVSP. Torres' Central File contained Sergeant Sylva's September 10, 2025, Threat Chrono, the ICC's NDRH denial decision, enemy concern documentation, and gang dropout status documentation. CDCR's Strategic Offender Management System ("SOMS") flagged Torres' documented threat status.

37. Pursuant to mandatory CDCR classification protocol, Defendants DOES 11-20 also reviewed Thomas Farias' classification file. **Farias' file documented his violent criminal history, including convictions for corporal injury on a spouse/cohabitant**

**involving strangulation-type conduct, second-degree burglary, and assault with a firearm. This history was directly relevant to cellmate compatibility assessment – particularly given that Torres would be strangled to death by Farias seven weeks later.**

38. **After reviewing the documented threat to Torres and Farias' violent history, Defendants DOES 11-20 consciously elected to approve the cell assignment without protective measures or compatibility screening.** Had Defendants complied with mandatory review and compatibility procedures, Torres would not have been assigned to a cell with Farias.

**C.    The Attack**

39. On November 29, 2025 – KEVIN Torres' birthday and approximately seven weeks after Sergeant Sylva documented the threat – TORRES and FARIAS were confined together in a cell in D Yard, Building 8 at SVSP.

40. Earlier on November 29, 2025, TORRES and FARIAS were involved in an audible altercation over food. **The argument involved Farias "freak[ing] out and start[ing] yelling" – conduct audible to correctional officers and/or inmates in adjacent cells.** Torres' registered domestic partner, NICOLE TORRES, spoke with her partner by telephone at approximately 6:35 p.m., during which TORRES described the altercation. This was the last conversation NICOLE TORRES had with her partner.

41. Defendants DOES 21-30, correctional officers assigned to D Yard, Building 8, during the evening watch, were aware of Torres' documented threat status based on shift briefings and housing-unit safety logs. They were also aware of the earlier altercation between Torres and Farias. Despite actual awareness of these risk factors, DOES 21-30 failed to conduct security checks at the intervals required by regulation and consciously disregarded the heightened risk by failing to intervene.

42. At approximately 9:19 p.m., custody staff discovered TORRES unresponsive in his cell. The manner and cause of death was homicide by strangulation.

///

43.     The nearly three-hour gap between Torres' last known contact (6:35 p.m.) and his discovery (9:19 p.m.) demonstrates that security checks were not conducted at the intervals required by California Code of Regulations, Title 15, section 1027.5, which mandates that "[s]ecurity checks shall be conducted at least every 30 minutes" in housing units. **The manner of death – strangulation – indicates a prolonged attack that would have been interrupted by timely checks. Manual strangulation typically requires sustained pressure for several minutes to cause death; timely discovery during even a late-stage strangulation allows for potential resuscitation through CPR and emergency medical intervention.**

44.     TORRES was transported to an outside medical facility, where he was pronounced deceased at 10:49 p.m. THOMAS FARIAS was placed in restricted housing. The Monterey County Coroner determined the cause of death to be homicide by strangulation.

**D.     Pattern of Cellmate Homicides Known to Defendant Santoro**

45.     At least five inmates were murdered at SVSP between September 2024 and November 2025, including Kevin Torres. At least two prior victims were killed by their cellmates:

      a.     <u>September 30, 2024 – Colin Hebert</u>:  Hebert was found unresponsive in his cell. His **cellmate**, Jessie Hernandez, was placed in restricted housing. One inmate-manufactured weapon was recovered.

      b.     <u>June 27, 2025 – Jose Rodriguez</u>:  Rodriguez was found unresponsive in his cell. His **cellmate**, Steven Miranda, was restrained and removed.

46.     **This pattern of cellmate homicides put Defendant SANTORO on specific notice that SVSP's cellmate compatibility screening and cell assignment protocols were failing. Despite this pattern, no corrective measures were implemented before Torres' death.**

///

///

**E.   Defendant Santoro's Specific Failures**

47.   Defendant SANTORO, as Warden, received detailed incident reports following each prior homicide and was required by CDCR policy to submit corrective action plans to headquarters. Despite this notice:

   a.   SANTORO implemented no enhanced cellmate compatibility screening protocols after the Hebert and Rodriguez cellmate homicides;

   b.   SANTORO implemented no protocol to ensure that inmates with documented threats received protective classification upon transfer to SVSP;

   c.   SANTORO implemented no protocol requiring cross-referencing of inmate threat documentation with cellmate violent history during housing assignments;

   d.   SANTORO implemented no enhanced monitoring protocol for inmates with documented vulnerabilities.

48.   The need for such measures was obvious based on: (a) the pattern of cellmate homicides at SVSP; (b) the $1.9 million *Castro v. State* settlement for failure-to-protect at SVSP; (c) CDCR's two system-wide modified program orders in 2025 acknowledging a "surge in violence"; and (d) the federal contempt order and $112 million in fines for chronic understaffing.

49.   **Had SANTORO implemented corrective measures after the prior cellmate homicides, Torres would not have been assigned to a cell with Farias without protective screening. The denial of protective housing and transfer without protective classification was the moving force behind Torres' death.**

**F.   Deliberate Indifference Under *Farmer v. Brennan***

50.   The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan,* 511 U.S. 825 (1994). A prison official violates this duty when:  (1) the inmate faces conditions posing a substantial risk of

serious harm (objective component); and (2) the official knows of and disregards that risk (subjective component). *Id.,* at 834, 837.

51.    **Defendants' subjective knowledge is established by direct evidence:**

   a.  Sergeant Sylva's September 10, 2025, CDC Form 128-B Threat Chrono documenting the "dangerous situation" and "potential violent altercations";

   b.  The ICC's written decision expressly referencing the Threat Chrono and confirming actual awareness while denying protective housing;

   c.  SOMS alerts flagging Torres' documented threat status for SVSP classification staff;

   d.  Farias' classification file documenting his violent criminal history;

   e.  The pattern of prior cellmate homicides at SVSP; and

   f.  The $1.9 million *Castro* settlement putting SVSP on notice of failure-to-protect liability.

52.    **After acknowledging the specific risk of violence, Defendants consciously elected not to implement protective measures. This is deliberate indifference.**

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 – Eighth Amendment Violation**

**(Failure to Protect)**

**(Against Defendants SANTORO and**

**DOES 1-50 in Their Individual Capacities)**

53.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

54.    The Eighth Amendment prohibits cruel and unusual punishment and imposes a duty on prison officials to protect inmates from violence. *Farmer v. Brennan,* 511 U.S. 825 (1994).

///

55. **Objective Component:** Kevin Torres faced conditions posing a substantial risk of serious harm: Documented threats recorded in a CDC Form 128-B Chrono; denial of protective housing; transfer to a facility with multiple recent cellmate homicides; assignment to a cell with a violent offender whose history included strangulation-type domestic violence. The objective component is satisfied.

56. **Subjective Component – Defendants DOES 1-10 (HDSP ICC):** The ICC's written decision expressly references Sergeant Sylva's September 10, 2025, threat documentation, confirming actual awareness of the specific risk of violence. After acknowledging this risk, the ICC knowingly disregarded it by denying protective housing and approving transfer without protective measures. This is deliberate indifference.

57. **Subjective Component – Defendants DOES 11-20 (SVSP Classification):** Pursuant to mandatory intake protocol, SVSP classification staff reviewed Torres' Central File containing the threat documentation and SOMS alerts, and reviewed Farias' file documenting his violent history. After reviewing this information, they consciously elected to approve the cell assignment without protective measures. This is deliberate indifference.

58. **Subjective Component – Defendants DOES 21-30 (Floor Officers):** Based on shift briefings, housing-unit logs, and the earlier audible altercation, floor officers knew of Torres' documented vulnerability and the cell conflict. Despite this knowledge, they failed to conduct required security checks and failed to intervene, knowingly disregarding the heightened risk. This is deliberate indifference.

59. **Subjective Component – Defendant SANTORO:** Based on incident reports from prior cellmate homicides, the *Castro* settlement, and system-wide modified program orders, Warden Santoro knew of the substantial risk of cellmate violence at SVSP. Despite this knowledge, she implemented no corrective measures to classification screening. This is deliberate indifference.

60. **Causation:** Had Defendants complied with mandatory review and compatibility procedures and implemented protective measures, Torres would not have been assigned to a cell with Farias and would not have been killed. The denial of protective

housing and transfer without protective classification was the moving force behind Torres' death.

61. As a direct and proximate result of Defendants' constitutional violations, Plaintiff has suffered damages including loss of Kevin Torres' love, companionship, comfort, care, assistance, protection, affection, society, and moral support, as well as severe emotional distress; mental anguish; grief; loss of financial support; and other damages according to proof.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 – Fourteenth Amendment Violation

### (Deprivation of Familial Association)

### (Against Defendants SANTORO and

### DOES 1-50 in Their Individual Capacities)

62. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

63. The Fourteenth Amendment protects the liberty interest of family members in their familial relationships. *Wilkinson v. Torres,* 610 F.3d 546 (9th Cir. 2010).

64. Nicole Torres, as Kevin Torres' registered domestic partner, had a constitutionally protected liberty interest in her familial relationship with Kevin.

65. Defendants' deliberate indifference to Kevin Torres' safety, which resulted in his death, deprived Nicole Torres of her liberty interest.

66. Defendants' conduct shocks the conscience. The ICC expressly acknowledged the documented threat to Torres' life – then denied protective housing and transferred him to a prison with multiple recent cellmate homicides, where he was assigned to a cell with a violent offender and strangled to death. This shocks the conscience.

67. As a direct and proximate result, Plaintiff has suffered damages including severe emotional distress, grief, mental anguish, and loss of familial companionship.

///

///

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 – Supervisory Liability

### (Against Defendant SANTORO in Her Individual Capacity)

68. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

69. Supervisory officials may be held liable under section 1983 for their own culpable action or inaction in the training, supervision, and control of subordinates. *Starr v. Baca,* 652 F.3d 1202 (9th Cir. 2011).

70. **Deliberate Indifference to the Need for Corrective Measures:** Defendant SANTORO was deliberately indifferent to the need to implement corrective measures to classification and cellmate screening protocols after the prior cellmate homicides (Hebert and Rodriguez). Specifically, SANTORO failed to implement: (a) Enhanced cellmate compatibility screening; (b) protocols ensuring inmates with documented threats received protective classification upon transfer; (c) cross-referencing threat documentation with cellmates' histories of violence; and (d) enhanced monitoring for vulnerable inmates.

71. **Obviousness of the Need:** The need for such measures was obvious based on: The pattern of cellmate homicides at SVSP (Hebert, Rodriguez); the $1.9 million *Castro* settlement; CDCR's modified program orders acknowledging a "surge in violence"; and the federal contempt order.

72. **Causation:** Had SANTORO implemented corrective measures after the prior cellmate homicides, classification staff would have screened Torres' documented threat against Farias' violent history and would not have approved the cell assignment. Torres' death would not have occurred.

73. As a direct and proximate result, Plaintiff has suffered damages as set forth above.

///

///

///

## FOURTH CAUSE OF ACTION

**Wrongful Death**

**(Cal. Code Civ. Proc. § 377.60)**

**(Against All Defendants)**

74. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

75. Pursuant to California Code of Civil Procedure section 377.60, Plaintiff Nicole Torres, as Kevin Torres' surviving registered domestic partner, brings this wrongful death action.

76. Defendants owed Kevin Torres a duty of care to provide reasonable protection from violence while in their custody.

77. Defendants breached their duty by knowingly disregarding the documented threat to Torres, failing to implement protective measures, and assigning Torres to a cell with a violent offender.

78. Defendants' breach was a substantial factor in causing Torres' death. Had Defendants implemented protective measures, Torres would not have been assigned to a cell with Farias and would not have been killed.

79. As a direct and proximate result, Plaintiff has suffered damages including loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support; as well as loss of financial support; funeral and burial expenses; and other damages according to proof.

## FIFTH CAUSE OF ACTION

**Survival Action**

**(Cal. Code Civ. Proc. § 377.30)**

**(Against All Defendants)**

80. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

///

81.    Pursuant to California Code of Civil Procedure sections 377.30 and 377.34, Plaintiff brings this survival action on behalf of the Estate of Kevin A. Torres.

82.    Kevin Torres experienced physical pain, suffering, and emotional distress during the attack. The manner of death – strangulation – indicates a prolonged attack during which Kevin was conscious and struggling, as evidenced by defensive marks on his fingers. Manual strangulation typically requires sustained pressure for several minutes. Kevin also experienced pre-death terror, knowing that the protective housing he had requested had been denied and the threat had materialized.

83.    As a direct and proximate result, the Estate is entitled to damages for pre-death pain, suffering, and emotional distress.

## SIXTH CAUSE OF ACTION

### Negligence

### (Against All Defendants)

84.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

85.    Defendants owed Kevin Torres a duty of care to exercise reasonable care in providing for his safety.

86.    Defendants breached their duty by:  (a) Knowingly disregarding the documented threat; (b) denying protective housing; (c) transferring Torres without protective classification; (d) assigning Torres to a cell with a violent offender without compatibility screening; (e) failing to respond to the cell conflict; and (f) failing to conduct required security checks.

87.    Defendants' breach was a substantial factor in causing Torres' death.

88.    As a direct and proximate result, Plaintiff has suffered damages as set forth above.

///

///

///

## SEVENTH CAUSE OF ACTION

**Breach of Mandatory Duty**

**(Cal. Gov. Code § 815.6)**

**(Against All Defendants)**

89. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

90. California Government Code section 815.6 provides that a public entity is liable for injury proximately caused by failure to discharge a mandatory duty imposed by an enactment designed to protect against the risk of injury.

91. California Code of Regulations, title 15, section 3341.5 provides: "The department shall ensure proper classification of inmates" and requires consideration of safety factors in housing assignments. This mandatory duty was designed to protect inmates from inmate-on-inmate violence.

92. California Code of Regulations, title 15, section 1027.5 provides: "Security checks shall be conducted at least every 30 minutes" in housing units. This mandatory duty was designed to protect inmates by ensuring timely intervention.

93. California Code of Regulations, title 15, section 3376 provides that the ICC "shall review" documented safety concerns when making classification decisions. This mandatory duty was designed to ensure that known threats are addressed.

94. Defendants breached these mandatory duties by: (a) Knowingly disregarding the documented threat when making classification decisions; (b) failing to ensure proper cellmate compatibility screening; and (c) failing to conduct security checks at 30-minute intervals, resulting in gap of nearly three-hours.

95. Had Defendants complied with these mandatory duties, Torres would have received protective classification, would not have been assigned to a cell with Farias, and would have been discovered during timely security checks before the strangulation was complete.

///

96.    As a direct and proximate result, Plaintiff has suffered damages as set forth above.

## EIGHTH CAUSE OF ACTION

### Violation of the Tom Bane Civil Rights Act

### (Cal. Civ. Code § 52.1)

### (Against All Defendants)

97.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

98.    California Civil Code section 52.1 provides that any person whose exercise or enjoyment of rights secured by the Constitution or laws of the United States or California has been interfered with by threats, intimidation, or coercion may bring a civil action for damages.

99.    Kevin Torres had a right to be free from cruel and unusual punishment, including a right to reasonable protection from violence while in state custody. These rights are secured by the Eighth and Fourteenth Amendments to the United States Constitution and article I, sections 7 and 17 of the California Constitution.

100.    Defendants interfered with Torres' exercise of these rights through conduct that constituted threats, intimidation, and coercion within the meaning of Civil Code section 52.1. Specifically, Defendants' deliberate indifference to Torres' documented safety concerns – including the ICC's denial of protective housing after acknowledging the documented threat, the transfer to SVSP without protective classification, the cell assignment with a violent offender, and the failure to conduct security checks – constituted deliberate action that interfered with Torres' constitutional rights. See *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004).

101.    As a direct and proximate result, Plaintiff has suffered damages as set forth above.

///

///

## NINTH CAUSE OF ACTION

**Failure to Summon Medical Care**

**(Cal. Gov. Code § 845.6)**

**(Against Defendants CDCR, SANTORO, and DOES 21-30)**

102. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

103. Government Code section 845.6 provides that a public employee who knows or has reason to know that a prisoner is in need of immediate medical care and fails to take reasonable action to summon such care is liable for injuries proximately caused by the failure to summon care. The public entity is also liable.

104. Had Defendants DOES 21-30 conducted security checks at the 30-minute intervals required by regulation, they would have discovered Torres during the strangulation attack and would have known he was in immediate need of medical care. By failing to conduct timely security checks, DOES 21-30 failed to take reasonable action to discover Torres' condition and summon emergency medical care.

105. Manual strangulation typically requires sustained pressure for several minutes to cause death. Timely discovery during even a late-stage strangulation allows for potential resuscitation through CPR and emergency medical intervention. The nearly three-hour gap between Torres' last known contact and his discovery ensured that medical intervention was impossible.

106. As a direct and proximate result, Plaintiff has suffered damages as set forth above.

## TENTH CAUSE OF ACTION

**Injunctive and Declaratory Relief**

**(42 U.S.C. § 1983; 28 U.S.C. §§ 2201-2202)**

**(Against Defendants SANTORO and DIAZ in Their Official Capacities)**

107. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

108.    Pursuant to *Ex Parte Young*, 209 U.S. 123 (1908), a suit for prospective injunctive relief against state officials in their official capacities is not barred by the Eleventh Amendment.

109.    The pattern of cellmate homicides at SVSP, combined with CDCR's failure to implement corrective measures to classification screening and cellmate compatibility protocols, demonstrates an ongoing violation of the Eighth Amendment that is reasonably likely to continue absent judicial intervention.

110.    Plaintiff seeks:  (a) A declaratory judgment that the policies, practices, and omissions of Defendants SANTORO and DIAZ at SVSP violate the Eighth Amendment; (b) a permanent injunction requiring Defendants to implement comprehensive reforms to classification screening, cellmate compatibility assessment, and security check compliance at SVSP; and (c) such monitoring as the Court deems necessary to ensure compliance.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For compensatory damages in an amount to be proven at trial;
2. For punitive damages against individual Defendants in amounts sufficient to punish and deter;
3. For pre-judgment and post-judgment interest as allowed by law;
4. For declaratory judgment that Defendants' conduct violated Plaintiff's and Decedent's constitutional and statutory rights;
5. For injunctive relief as set forth in the Tenth Cause of Action;
6. For reasonable attorneys' fees and costs pursuant to section 1988 of title 42 of the United States Code and California Civil Code section 52.1;
7. For funeral and burial expenses;

///

///

///

8.  For costs of suit; and

9.  For such other and further relief as this Court deems just and proper.


Respectfully submitted this 25th day of February, 2025, by


**HARRISON | KRISTOPHER, LLP**


By: _____
    Bryan J. Harrison, Esq.,
    Attorney for Plaintiff, NICOLE TORRES,
    individually, and as Successor-in-Interest to the
    Estate of KEVIN A. TORRES, Deceased

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted this 25th day of February, 2025, by


**HARRISON | KRISTOPHER, LLP**


By: _____
Bryan J. Harrison, Esq.,
Attorney for Plaintiff, NICOLE TORRES,
individually, and as Successor-in-Interest to the
Estate of KEVIN A. TORRES, Deceased